Shotwell, J.
A motion has been made by the defendant, asking that the court direct the jury to bring in a verdict for the defendant on the testimony as it has been offered.
The testimony of the plaintiff has been closed, and therefore the evidence, that he claims entitles him to recover, is before the court and the jury. The defendant insists that upon this testimony, including the testimony of the plaintiff himself, no case 'has been made that entitles him to recover, and this is a question for the determination of the court. The law is very well settled in a case of this kind, that the plaintiff can not recover if he himself has been guilty of negligence that directly contributes to his injury.
The evidence that has gone before the jury is very largely upon this question, and of necessity must be. The testimony shows that on the evening of January 22, 1905, he was in Jewett, on the north side of the railroad, having gone there from his home a *402 short time before on an errand, as he says, to carry some milk to some neighbors, and was returning to his home on the south side. When he got to the Wheeling & Lake Erie railroad he met a train coming east. He watched that train and then crossed that railroad right-of-way onto a bridge crossing the creek that lay between the two railroads, and on that bridge he stopped, looked in both directions and listened for approaching trains on the defendant’s road. While there he.saw the headlight of an engine and train near what is known as the telegraph tower west of Jewett, probably about one-half mile distant. He looked east-war dly in the opposite direction from this train and could see nothing and then started to cross this railroad, believing that he had time to cross in front of the train'that he saw near the telegraph tower. In doing so he had to pass over a distance of about fifteen feet to reach the first rail of the track. He had reached this place and was crossing the railroad when he heard some sharp blast of a whistle and turning his head he saw the train approaching from the east, that struck him, not more than fifty feet distant, as he says. He jumped and in jumping cleared the track sufficiently to be hit only by the forward part of the pilot of the engine and was thrown over one track to a side-track adjoining and in that way sustained his injuries.
Now the testimony in this ease is uneontradicted upon that question ; for his is the only testimony as to what did take place so far as he was individually concerned.
There is a good deal of testimony as to the condition of the evening. Some witnesses say that it was between four and five o’clock, and others say about five; that the church bells at that time in the evening were just ringing, according to the testimony of one witness. They all agree that it had not become entirely dark. It was a dusky day in the winter time and not as bright as some other days, and there is testimony to show that at that time in the evening, and at that place there was some smoke and some mist. The testimony shows conclusively that, notwithstanding the mist, a light could be seen a long distance; it was not foggy in that sense; for he says he saw the headlight of this train, according to his own testimony, a long distance away from where he was. The plaintiff admits himself that it was not dark; that *403 he could see objects; that be did see this train at the telegraph tower to the west when he looked for it. The testimony of the daughter of the plaintiff was that she saw the train coming from the east before it struck him and at the time that it passed over this crossing, and yet she says that she was across the creek, across the Wheeling & Lake Erie railroad right-of-way, across a street of the town and near three houses, as she says, south of where this cross street was, so that it must have been at a distance of at least one hundred yards or more that she saw that train.
There is testimony also of another witness—Mr. Kane—that he was on the main street of the town and saw the train passing down the railroad before it reached the crossing, and heard it whistle, which would be still further away than where the daughter was. All of this testimony is uncontradieted and goes to show that it was not so dark but that if he had looked he could have seen the train at least a considerable distance away. lie insists that the.headlight of the engine was not lighted, but admits that the signal lights were—the two lights that are on the forward part of the engine immediately under the headlight, showing one color of light to the side and one color of light to the front. He testified that these lights were lighted and that he saw them when he looked.
Now, with this testimony the conclusion is irresistible that if he had looked in the direction of this train that struck him, he could not have helped but see the train. He says he did not look in that direction after he left the bridge. There on the bridge he was standing to look; he started up and walked, according to his own testimony, fifteen feet before he reached the nearest part of the railroad. If you take a watch and start and walk that distance, you will see that in the time it took him to start up and walk that distance a train, moving at the rate of sixty or seventy miles an hour, as they sometimes move, or even thirty-five to forty miles an hour, as it is alleged this train was moving, and on a down-grade, as this was as the testimony shows, and on a straight track, as this was as the testimony also shows, that train would have been able to pass- over a distance of a quarter to half a mile during the time that intervened between the time when he says he looked and the time when he was struck; and in the meantime, as he says, he did not look at all.
*404 . With this testimony and these facts uneontradieted the question is, what is the law of the case. There are a great many authorities bearing upon this question. In New York, C. & St. L. Ry. v. Kistler, 66 Ohio St., 326,. the Supreme Court lays down the rule thus:
“The looking required before going upon a crossing, should usually be just before going upon the track, or so near thereto as to enable the pferson to get across before a train within the range of his view of the track, going at the usual rate of speed of fast trains, would reach the crossing. ’ ’
Arid in the opinion, on page 336, it is said:
“To drive upon a crossing without first looking for passing trains is alfeo negligence. The looking should usually be just before going upon the crossing, or so near thereto as to enable the person to get across in safety at the speed he is going before a train within the range of his view of the track, going at the usual spfeed of fast trains, would reach the crossing. .There should bfe such looking before going upon the track, even though there was a looking farther away when no train was seen approaching. A train at the usual speed will go quite a distance, while a team on a walk or trot will go a much shorter distance. The care to be taken in such cases should correspond with -the danger. ’ ’
See, also, Detroit Southern Ry. v. Lambert, 150 Fed. Rep., 555.
Baltimore & Ohio Ry. v. McClellan, 69 Ohio St., 142, was a case where a party had been at a railroad station to see if a tub of oysters had come that he had ordered (he was a restaurant keeper); and when he was there a train, with two engines to it, was standing immediately across the track, partly obstructing the street. A passenger train was due to pass and did pass while he was there. Another freight train was on a siding immediately in the neighborhood waiting for the passenger train to pass, when it would come out and follow the passenger train. The man was on the platform to see if his oysters had come, and the passenger train having passed, he stepped on the track, when the freight train, that had been on the siding, backed down on him and ran over and killed him. The testimony showed that the track at •that time was obscured, more or less, by steam and smoke from *405 the engine that stood partly over the crossing where he was passing, yet the court held there could be no recovery, because if he looked he could not have helped seeing the train approaching that killed him, and it was his duty to look wheh the train was so near that he would have time to avoid it. In other words, he must look when looking would be effective, and not so long before that the looking would be useless; and because he did not, his administrator could not recover.
The cases are also collected very fully in 7 Ohio Cyc. Dig., “Railroads,” Sections 959-965, 974 and 975. The law laid down and supported by a great many authorities is this:
“ It is the duty of a traveler upon -the highway, when approaching a railroad crossing, to make use of his senses to ascertain if there is a train in the vicinity, and if, when in full possession of his faculties, he fails to see or hear anything, when a prudent man, exercising his eyes and ears, with ordinary care, would have discovered a train in close proximity, and he is thereby injured, he is guilty of such negligence as will prevent a recovery.
“The looking required before going upon a crossing should usually be just before going upon the track, or so near thereto as to enable the person to get across before a train within the range of his view of the track, going at the usual rate of speed of fast trains, would reach such crossing. ’ ’
Then again as bearing upon this question of signal and absence of a headlight:
‘ ‘ Negligence of a railroad company, in giving signals, or omitting precautions of any kind, will not excuse the omission of a person about to cross the tracks of such company, who is in the full enjoyment of the faculties of hearing and seeing, in using such faculties for the purpose of discovering and avoiding danger from approaching trains before crossing such track.” New York, C. & St. L. Ry. v. Swartout, 14 C. C., 582.
If it be claimed in this case that the Wheeling & Lake Erie train, and the noise made by it, obscured the hearing, the court says on page 593:
“The duty to look and listen includes the duty to do that which will make looking and listening reasonably effective. If there is a permanent obstruction to sight that makes danger invisible, or a transient noise that makes it inaudible, it is negli *406 gence to go forward from a place of safety to a place of possible danger. Prudence requires delay until the transient noise has abated and hearing again becomes efficient for protection.”
Under these authorities and the testimony, my duty in this case is plain. I think that Mr. Devore had no right to stop on this bridge and look for a train in this direction and then deliberately walk the distance he says he did onto the track and never look again. The look that he gave was of no aid to him, and the look he should have given he omitted altogether—that was the look that the law required him to give.
I think it is conclusive that he was guilty of contributory negligence directly causing his own injury; so that the motion to direct a verdict will be sustained.
You will retire to your jury room and a verdict will be furnished you in favor of the defendant which you will sign and return to the court.